Erin Ronstadt, SBN 028362
Jeremy Pekas, SBN 025678
CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Suite 150
(602) 277-1745
(602) 761-4443 Fax
erin@caldwellober.com
jeremy@caldwellober.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sharyn A. Medeiros, a married woman, | **No.** |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Wells Fargo & Company Long-Term Disability Plan, an ERISA benefit plan; Liberty Life Assurance Company of Boston, a plan fiduciary; and Wells Fargo & Company, a plan administrator, | |
| Defendants. | |

For her claims against Defendants Wells Fargo & Company Long-Term Disability Plan, No. 505 (the "Plan"), Liberty Life Assurance Company of Boston ("Liberty"), and Wells Fargo & Company ("Wells Fargo") (collectively "Defendants"), Plaintiff Sharyn A. Medeiros ("Medeiros") alleges as follows:

**JURISDICTION, VENUE AND PARTIES**

1.     This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").

2.     The Plan is a purported ERISA benefit plan established and maintained by Wells Fargo for the benefit of its employees. The Plan is a welfare benefit plan that offers long-term disability ("LTD") benefits.

3.     Wells Fargo provides certain Wells Fargo employees with LTD insurance pursuant to the Plan and other documents comprising the Plan.

4.      Wells Fargo is the Plan Administrator, Plan Sponsor and Employer for the Plan.

5.      Wells Fargo administered the Plan in Arizona to its employees, including Medeiros.

6.      Wells Fargo funded LTD benefits under the Plan through the purchase of the Group Policy Number GF3-850-289424-01 (the "Policy") from Liberty.

7.      At all relevant times, Liberty administered short-term disability ("STD") and LTD claims for Wells Fargo under the Plan.

8.      Wells Fargo funds the Plan's STD benefits, while the Plan's LTD benefits are fully insured by Liberty.

9.      Liberty acted under a structural conflict of interest in both administering and paying out LTD claims under the Plan.

10.     At all relevant times, Medeiros was a participant and beneficiary of the Plan as an employee of Wells Fargo.

11.     Medeiros remains a covered individual under the Plan eligible for LTD benefits.

12.     Medeiros is and was at all relevant times a resident of Maricopa County, Arizona.

13.     The Plan and Wells Fargo, a large corporation, have their principal place of business in the State of California.

14.     Liberty has its principal place of business in the State of Massachusetts.

15.     Defendants Liberty and Wells Fargo are licensed and authorized to do business in Maricopa County, Arizona, and reside and are found within Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

16.     This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

17.     Venue is proper in this Court under ERISA, 29 § 1132(e)(1) and 28 U.S.C. § 1391(b).

18.     Wells Fargo exercised and reserved authority to make final decisions regarding the administration and payment of disability benefits for the Plan. Liberty acted as its agent to make final decisions regarding the payment of disability benefits for the Plan and to administer the Plan. Accordingly, Medeiros is informed and believes that Wells Fargo and Liberty are either a "named fiduciary" of the Plan pursuant to 29 U.S.C. § 1133(2); and/or a  "deemed fiduciary" pursuant to 29 U.S.C. § 1002 (21)(A); and/or a "designated fiduciary" pursuant to 29 U.S.C. § 1105(c)(1)(B).

19.     Liberty had actual or apparent authority to act as a fiduciary on behalf of the Plan.

20.     Liberty's third-party vendors had actual or apparent authority to act as fiduciaries on behalf of the Plan and administered the Plan in providing services to Defendants.

21.     On information and belief, Liberty acted as an agent for Wells Fargo.

22.     On information and belief, Wells Fargo has not properly conferred Liberty with the discretionary authority to interpret the Plan and to make eligibility determinations regarding the Plan.

23.     Medeiros is entitled to *de novo* review of her claims.

## GENERAL ALLEGATIONS

24.     All previous paragraphs are incorporated by reference.

25.     Medeiros began working for Wells Fargo in 1996. In 2006, she was promoted to Treasury Management Relationship Associate II and thereafter to Senior Treasury Associate. Throughout her employment with Wells Fargo, Medeiros was

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

praised for her work and received numerous accolades for her achievements. She was considered senior management at Wells Fargo.

26. Her job duties as Senior Treasury Associate were extensive. Medeiros provided the following explanation to Liberty in a letter dated April 24, 2013:

> I was a lead Treasury Associate as I had been in the bank for 16 years and mastered this Treasury function very well, as was the case in every position I held at Wells Fargo Bank.  So, I not only managed a portfolio for 5-8 bankers and their assistants in my office, I also was the "go to" person for the Commercial Real Estate group as a whole in my occupation.  This entailed providing daily Treasury support, advisement and training to other Treasury Associates within the Commercial Real Estate group. At a minimum, I supported, trained and assisted 15 other treasury Associates on a daily basis.  I simultaneously reviewed all incoming email/voice mail requests, inquiries from clients and internal staff, specifically the Commercial Banker and their support staff.  I coordinated the treasury product set up with the "back shop" to ensure the client had intricate systems in place, which assisted them in their operations.  In order to manage this for the client, one would require extensive knowledge of the bank products, how they function and how to implement them.  Therefore, I maintained current knowledge of organizational policies and procedures, federal and state policies and directives, and current treasury standards.

27. As part of her role as Senior Treasury Associate, Medeiros also performed account analysis, assisting Wells Fargo in determining profit margins, determining cost of service provided by Wells Fargo to the account holder, and determining an all-encompassing grouping/snapshot of each account holder, which included the Wells Fargo products the account holder utilized.

28. Under the Plan, Medeiros is disabled when, due to sickness or injury for 24 months, she is "unable to perform the material and substantial duties of [her] own occupation for any employer in [her] local economy" (the "Own Occupation Period").

29. "Own Occupation" refers to the activity regularly performed at the initial date of disability, which is considered Medeiros' role as Senior Treasury Associate.

30. After 24 months of receiving LTD benefits in the Own Occupation Period, the Plan provides continued LTD benefits when a claimant remains disabled from "any occupation."  To qualify for LTD benefits in the "any occupation" period, Medeiros

must be "unable to perform the material and substantial duties of any occupation for which [she is] reasonably qualified, taking into account [her] training, education, experience, and predisability pay for any employer in [her] local economy" (the "Any Occupation Period"). The Plan defines "any occupation" as one that the claimant either is or may become "reasonably fitted by training, education, experience, age, physical and mental capacity." Moreover, Medeiros must be capable of performing the material and substantial duties of any occupation *with reasonable continuity* during the Any Occupation Period (emphasis added). Any identified occupations must also be in "an area within which it would be reasonable for [Medeiros] to travel to secure employment" and should be based on the geographic area surrounding her residence.

31.    'Material and substantial duties' are defined as "responsibilities that you are normally required to perform at your own occupation and that cannot be reasonably eliminated or modified."

32.    To be eligible for LTD benefits, Medeiros must "[r]eceive appropriate care and treatment by a doctor on a continuous basis" and submit proof of disability.  Proof "may include but is not limited to a completed Attending Physician's Statement, medical records, test results, mental health records, prescription records, and any other medical information that may be needed in the evaluation of [her] claim."

33.    If a claimant is disabled due to mental illness, LTD benefits are generally limited to 24 months under the Plan, with certain exceptions.

34.    Schizophrenia and Bipolar Disorder are some of the exceptions to the mental illness limitation under the Plan.

35.    Under the Plan, Medeiros is entitled to LTD benefits until her normal retirement age as defined by the Social Security Administration (the "SSA"), which is 67 years old.

36.    Medeiros sustained a work injury to her left rib cage and spine in January 2010. She had persistent pain, which has only worsened and spread to other areas of her

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ  85016
(602) 277-1745

body, including her left arm and shoulder, back, hip, groin, and leg. The persistent pain she felt caused Medeiros to become depressed and anxious.

37.     On January 18, 2011 Medeiros was hospitalized at Banner Good Samaritan Medical Center.  She felt an acute snap in her left ear and could not breathe.  She reported tremors, whole body pain, and trouble ambulating.

38.     Following her hospital admission, Medeiros' physical and mental health continued to significantly deteriorate. Her treating providers would not clear her to return to work, and she was incapable of working.

39.     Medeiros completed 25 weeks of short-term disability ("STD") benefits from January 17, 2011 through July 18, 2011 at 100% of her covered salary.  She had completed 14 years of service to Wells Fargo as of her last day worked on or about January 14, 2011.

40.     Medeiros' claim for LTD benefits was subsequently approved on August 9, 2011.

41.     Liberty handled both Medeiros' STD and LTD claims.

42.     On October 12, 2011, Liberty terminated Medeiros' LTD benefits two months after approving her LTD benefits. Medeiros timely appealed, and her claim was referred to the Appeals Review Unit (the "ARU").

43.     While her appeal was being reviewed by the ARU, Medeiros was admitted to a hospital for inpatient psychiatric treatment.

44.     After the ARU review, Liberty reinstated Medeiros' LTD benefits on December 8, 2011.

45.     Liberty again terminated Medeiros' LTD benefits again on June 27, 2012.

46.     Medeiros timely appealed in a letter dated December 21, 2012.

47.     Liberty reinstated Medeiros' LTD benefits effective June 28, 2012 in a letter dated March 14, 2013.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

48.     Liberty terminated Medeiros' LTD benefits for a third time on May 2, 2013, limiting Medeiros' LTD benefits for 24 months from January 18, 2011 through July 17, 2013.

49.     Medeiros timely appealed Liberty's May 2, 2013 decision on November 13, 2013.

50.     Liberty was required to make a decision on Medeiros's claim within 45 days. *See* 29 C.F.R § 2560.503-1. If Liberty required another 45 days for making a determination, it had an obligation to notify Medeiros beforehand of its need for such an extension, including the special circumstances requiring the extension and the date by which it expected to have a determination. *See* 29 C.F.R § 2560.503-1(i)(3).

51.     Liberty's 45-day deadline for making a determination expired on December 30, 2013.

52.     Medeiros had not received a response from Liberty to her appeal as of December 30, 2013.

53.     In a letter dated January 23, 2014, Medeiros asked Liberty for a status update on its review of her appeal.

54.     To date, Medeiros has yet to receive any communication from Liberty concerning her November 13, 2013 appeal.

55.     Since her last day worked, Medeiros has remained totally disabled under the Plan.

56.     Medeiros has been diagnosed with Chronic Pain Syndrome, Costochondritis, rib strain, depression, anxiety, and Bipolar Disorder.

57.     Medeiros has a P450 2D6 enzyme deficiency.

58.     Medeiros' P450 2D6 enzyme deficiency complicates her ability to get the necessary treatment she needs.

59.     Medeiros has seen various specialists for her pain but without relief.

60.     Medeiros cannot perform the duties of her own occupation or any occupation with reasonable continuity as required under the Plan.

61.     Medeiros continues to be disabled as defined by the Plan for LTD benefits eligibility.

62.     Medeiros is currently forty-nine (49) years old and should be entitled to LTD benefits until at least sixty-seven (67) years old.

63.     Medeiros' claims are subject to *de novo* review.

64.     Medeiros exhausted her administrative remedies under the Plan.

65.     Medeiros satisfied all of the jurisdictional prerequisites to filing a claim, and her claim is timely before this Court.

66.     Upon information and belief, Medeiros may be entitled to additional benefits from Wells Fargo as a disabled employee including, but not limited to, health insurance, life insurance, supplemental LTD benefits, and retirement/pension credits.

**COUNT I**
**(Recovery of Plan Benefits)**
**(Liberty and the Plan)**

67.     All previous paragraphs are incorporated by reference.

68.     The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.  Defendants are the Plan, Plan administrators or Plan fiduciaries of the Plan under ERISA.

69.     The Plan represents LTD coverage and a promise to provide LTD benefits until Medeiros is no longer disabled under the terms of the Plan.

70.     Medeiros became disabled in 2011 and continues to be disabled. She has claimed the benefits under the Plan to which she is entitled.

71.     Medeiros reasonably expected that her conditions met the requirements of total disability as defined by the Plan for LTD benefits, and that she would receive benefits under the Plan until age 67 or until she was no longer disabled.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

72.     Despite the coverage of Medeiros' disability, Defendants have improperly denied LTD benefits to Medeiros in breach of the Plan.  This breach was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence and was clearly erroneous.

73.     In its May 2, 2013 denial, Liberty ignored the medical evidence addressing Medeiros' physical complaints, choosing instead to characterize Medeiros' conditions under the mental illness limitation.

74.     Liberty faulted Medeiros for the fact that her doctors have yet to definitively diagnosis her.

75.     Liberty arbitrarily limited Medeiros' disabilities to "depression and anxiety," ignoring that she also suffers from Bipolar Disorder, which is exempt from the 24-month mental illness limitation under the Plan.

76.     The record supports Medeiros' Bipolar Disorder, and that it is a likely culprit for Medeiros' total disability. The limitations secondary to Medeiros' Bipolar Disorder diagnosis make Medeiros eligible for LTD benefits beyond the 24-month mental illness limitation.

77.     Since 2011, Medeiros has been evaluated by four different medical professionals for psychiatric issues. Each medical provider has at one time diagnosed Medeiros with Bipolar Disorder.

78.     The Plan specifically requires that Medeiros be able to perform the material and substantial duties of her own occupation and any occupation with "reasonable continuity." Due to her medical conditions and the supporting medical evidence, Medeiros would not be able to reliably perform any occupation in a satisfactory manner.

79.     Before terminating her LTD benefits for a third time, Liberty determined that an occupational analysis was necessary to evaluate Medeiros' continuing eligibility into the Plan's Any Occupation Period. Medeiros' claim was assigned on March 16,

2013 to a vocational counselor for an occupational analysis ("OA"). Medeiros promptly responded to all of Liberty's requests for information to assist in its preparation of the OA.

80.    When disclosing the claim file following the May 2, 2013 denial, Liberty did not disclose communications between Medeiros and its vocational counselor, Michelle Reddinger. Absent from Medeiros' claim file was the March 23, 2013 email from Ms. Reddinger requesting information about Medeiros' previous occupation and Medeiros' April 24, 2013 response letter.

81.    Even though Liberty initiated the process for an OA, it unreasonably failed to disclose the OA.

82.    On information and belief, when the OA was not favorable to a denial of benefits, Liberty changed its strategy for denying Medeiros' claim by relying on the 24-month mental illness limitation.

83.    Liberty based its May 2, 2013 denial on three consultant reviews performed by: Dr. Jansen, a consultant board certified in orthopedic surgery; Dr. Williams, a consultant board certified in psychiatry; and Jennifer Sullivan, an "in-house medical professional."

84.    Liberty should not have relied on Dr. Jansen's review for determining Medeiros' restrictions and limitations.  As a preliminary matter, it is outdated and based on old medical evidence.  It was completed on June 14, 2012, before Medeiros' December 21, 2012 appeal and submission of additional medical evidence.

85.    Dr. Jansen completed his review as part of a Multidisciplinary Panel Review with Dr. Eric Kaplan.

86.    In his June 15, 2012 report, Dr. Kaplan found that Medeiros "is receiving appropriate psychiatric care that is within current standards based on the American Psychiatric Association Guidelines for the treatment of depression, *bipolar disorder* and panic disorder" (emphasis added).

-10-

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ  85016
(602) 277-1745

87.     Dr. Jansen's determinations were based on his "peer-to-peer consultation" with Dr. Steingart and Dr. Kaplan. Dr. Jansen did not reach out to any of Medeiros' other providers. Dr. Steingart conceded that he had only seen Medeiros on two occasions for surgical evaluation. Although Dr. Steingart indicated that no further treatment was planned, this does not mean that Medeiros's pain was not credible.

88.     In addition to the substantive deficiencies with the review, Dr. Jansen's review does not contemplate the new medical evidence submitted after his report. Furthermore, the credibility of Dr. Jansen's report is significantly undermined by Liberty's subsequent decision to reinstate Medeiros' LTD benefits. After considering Medeiros' December 2012 appeal, Liberty's ARU made the following recommendation on March 14, 2013:

> "Overturn original determination to deny benefits beyond 6/27/12. It is reasonable to conclude, based on the peer review findings, that the team member did not have sustained full-time work capacity at the time further benefits were denied. Therefore the claim should be reopened, benefits should be approved to date and **updated information should be requested in order to evaluate her continued eligibility for benefits. It may be appropriate to consider having the team member examined and/or obtaining additional observation of her activities, depending on her current status as documented in the updated medical records."**

(emphasis added).

89.     Liberty cannot reasonably rely on Dr. Jansen's old report when it specifically documented the need for "updated information."

90.     Ms. Sullivan's review was based on Dr. Jansen's review.

91.     Dr. Williams' report found support for restrictions and limitations due to psychological issues and, just like Dr. Kaplan, also found support for Bipolar Disorder but stated he needed additional medical records.

92.     Liberty did not notify Medeiros of how to perfect her claim or of what additional medical records it needed, including but not limited to those that would have assisted Dr. Williams in his peer review.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

-11-

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

93.     On information and belief, Dr. Williams did not get to review the additional medical evidence submitted on appeal, because Liberty abandoned its review of Medeiros' November 2013 appeal.

94.     Liberty's determination that Medeiros was not entitled to benefits was influenced by an improper conflict of interest.

95.     In terminating Medeiros' LTD benefits, Liberty completely disregarded evidence of Medeiros' cognitive issues, which constituted disability.

96.     Medeiros provided objective medical evidence that was consistent with her complaints and supported total disability.

97.     Liberty failed to credit Medeiros' subjective complaints and improperly demanded objective evidence, contrary to the language of the Plan.

98.     To the extent that the Plan required objective medical evidence, Medeiros' continual efforts and the chart notes of multiple doctors support her pain complaints. Liberty has not provided any reasons to discredit Medeiros' pain complaints.

99.     Liberty improperly failed to consider the effect of Medeiros' medications in determining whether she is totally disabled under the Plan.

100.     Liberty's own reviewer, Dr. Williams, acknowledged that Medeiros' P450 2D6 enzyme deficiency "is significant for management of psychiatric medications."

101.     Given Medeiros' pain and cognitive dysfunction, she cannot perform the material and substantial duties of a sedentary occupation.

102.     Liberty acted arbitrarily and capriciously when it selectively reviewed Medeiros' medical records, relying only on those portions of her medical records that supported a denial of benefits. Liberty unreasonably disregarded medical evidence in Medeiros' file.

103.     Liberty's procedural irregularities include but are not limited to: all correspondence between Liberty and the independent medical examiners, peer reviewers, and medical reviewers/consultants; improperly delegating duties to third

parties; behaving as an adversary bent on denying the claim; impermissibly "cherry picking" only evidence favorable to Liberty from Medeiros' claim file; abandoning its OA without explanation; improperly relying on Dr. Jansen and Ms. Sullivan's reviews; and failing to credit Medeiros' subjective complaints and improperly demanding objective evidence.

104.    Liberty had the same disability claims manager, Lenny Costa, handle all of Medeiros' appeals and both of her STD and LTD claims in violation of ERISA.

105.    Liberty's numerous procedural errors rise to the level of a "wholesale and flagrant" violation of ERISA, entitling Medeiros to *de novo* review.

106.    Liberty did not act as a fiduciary in Medeiros' best interests.

107.    On information and belief, the peer reviewers and Liberty's employees were financially incentivized to deny Medeiros' claim.

108.    Liberty handled Medeiros' claim in an adversarial manner and failed to administer the Plan prudently and in Medeiros' interests.

109.    On information and belief, the doctors employed by Liberty, including but not limited to Drs. Jansen and Kaplan, are biased against claimants.

110.    On information and belief, Liberty improperly interpreted the terms of the Plan.

111.    On information and belief, Liberty administered claims without the benefit of the Plan.

112.    Under the Department of Labor's ERISA claim regulations, every employee benefit plan must establish and maintain a reasonable claims procedure that provides for adequate written denials of claims, as well as an opportunity for 'full and fair review' of benefit denials. To meet this requirement, a plan administrator must, among other things, issue a timely decision at every stage of the claim process.

113.    Liberty failed to render a timely decision on Medeiros' appeal.

-13-

114.    Medeiros' appeal is deemed denied, and she has exhausted her administrative remedies.

115.    Medeiros is entitled to a full and fair review on the merits of her claim under § 502 of ERISA for Wells Fargo's and Liberty's failure to comply with the law.

116.    Defendants are not entitled to an arbitrary and capricious standard of review of their decision in this action, so Medeiros' claims are entitled to *de novo* review with a bench trial on the record.

117.    Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal and state common law, Medeiros is entitled to recover all benefits due under the terms of the Plan, and to enforce her rights under the Plan.

118.    Medeiros is entitled to seek any and all relief allowed pursuant to ERISA, including equitable remedies, in an effort to enforce her rights under the Plan.

119.    Medeiros is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of her disability benefits. She is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully terminated.

120.    Pursuant to 29 U.S.C. § 1132(g), Medeiros is entitled to recover her attorneys' fees and costs incurred herein from Liberty.

121.    Medeiros is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid in full.

**COUNT II**
**(Failure to Disclose Plan Documents)**
**(Wells Fargo)**

122.    All previous paragraphs are incorporated herein by reference.

123.    Pursuant to 29 U.S.C. §1132(c)(1)(B), "any administrator who fails to comply with a request for any information which such administrator is required by this

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

subchapter to furnish to a participant or beneficiary . . . may in the court's discretion be personally liable to such participant or beneficiary."

124.    Under 29 U.S.C. §1024(b)(4), "[t]he administrator shall, upon written request of any participant or beneficiary furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."

125.    As the named Plan Administrator and Plan Sponsor, it was Wells Fargo's responsibility to respond to Medeiros' written requests for plan documents and other relevant documents under ERISA.

126.    On June 28, 2012, Medeiros requested from Wells Fargo the plan documents governing her LTD benefits, among other requests for information.

127.    In a letter dated July 6, 2012, Wells Fargo provided Medeiros with a copy of the "2012 Wells Fargo and Company Official Plan Document" (the "Health Plan"). Wells Fargo established the Health Plan with the specific purpose of providing "medical, dental and vision benefits."

128.    The Health Plan does not apply to Wells Fargo's STD and LTD benefits.

129.    The Health Plan does not list the STD and LTD Plans as component programs or plans.

130.    On or about October 18, 2012, Medeiros again requested the governing plan documents for her LTD benefits. She explained that Wells Fargo had previously only disclosed the Health Plan, which did not apply to or provide any information about her LTD benefits. Among the information she requested, Medeiros asked for "[a] certified copy of any plan documents, including the short-term and long-term disability Plans, the Summary Plan descriptions, insurance policies, contracts or other relevant documents concerning this claim;" "[a] copy of all contracts for the administration of the Plan by or between any claims administrators, Plan administrators and employers for the

-15-

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ  85016
(602) 277-1745

period covering the onset of [Medeiros'] employment with [Wells Fargo] through the present;" and the most recent Form 5500 filing.

131.   In a letter dated November 23, 2012, Wells Fargo responded by providing the STD and LTD disability chapters from the 2011 Wells Fargo Benefits Book, which it represented to be Summary Plan Descriptions ("SPDs"). Wells Fargo stated it requested that Liberty provide Medeiros with a copy of the "fully insured policy."

132.   Wells Fargo did not disclose the fully insured policy, its application for the Policy, a Certificate of Coverage, or any other plan documents in response to Medeiros' written request.

133.   Wells Fargo never disclosed information about the premiums it paid in exchange for the Policy.

134.   Liberty never sent Medeiros a copy of the "fully insured policy" following Wells Fargo's November 23, 2012 letter.

135.   Neither Wells Fargo nor Liberty sent Medeiros a Certificate of Coverage for her LTD benefits.

136.   On information and belief, Wells Fargo failed to establish or maintain a plan document pursuant to ERISA for its STD and LTD benefits.

137.   In a letter dated November 27, 2012, Wells Fargo sent a copy of the 2011 Form 5500 filing for the Health Plan. It did not include any filings for a STD or LTD plan.

138.   On information and belief, Wells Fargo never filed a Form 5500 or any other filings for the LTD Plan.

139.   Neither Liberty nor Wells Fargo provided executed plan documents, including but not limited to executed Policy amendments.

140.   The Policy is not an ERISA plan.

141.   If the Policy is an ERISA plan, it is out of compliance with ERISA requirements.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

142.    If the Policy is an ERISA plan, it should not be considered the governing document of Medeiros' LTD benefits.

143.    Wells Fargo represented the SPDs to be the official plan documents for LTD benefits.

144.    On information and belief, the LTD SPD represents Wells Fargo's intended LTD coverage for its eligible employers.

145.    On information and belief, the LTD SPD is the governing plan document of Medeiros' LTD benefits.

146.    The LTD SPD should be treated as the governing plan document of Medeiros' LTD benefits.

147.    Alternatively, the LTD plan incorporates the LTD SPD as part of the LTD plan.

148.    Medeiros is informed and believes that Wells Fargo, as the Plan Sponsor, never accepted any amendments to the Policy.

149.    Wells Fargo failed or refused to comply with its disclosure obligations under 29 U.S.C. § 1132(c).

150.    Wells Fargo's failure or refusal to disclose documents was not a result of matters outside of its control. It was unreasonable that Wells Fargo did not have the documents available.

151.    Wells Fargo has not produced any formal Plan amendment authorizing any changes to the terms of the Plan or Policy.

152.    To date, Wells Fargo never provided a proper disclosure of Plan documents to Medeiros.

153.    Wells Fargo acted without justification and breached its fiduciary duties to Medeiros and other plan participants by failing to maintain and disclose plan documents under ERISA.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

154.    The disclosure requirements of ERISA are not empty suggestions for fiduciaries such as Wells Fargo. The disclosure requirements amount to specific guidelines imposed for the purpose of ensuring that plan participants, such as Medeiros, can follow and gauge the availability and character of ERISA plans, including the very structure of the LTD benefit plan itself. Without adequate information, Medeiros cannot know or enforce her rights to LTD benefits or anticipate alterations in benefits under the Policy.

155.    As Plan Administrator and Plan Sponsor, Wells Fargo is liable for failing to disclose documents pursuant to 29 U.S.C. §1132, et. seq. since thirty (30) days from the date Medeiros first provided Wells Fargo with a written request for Plan documents.

156.    Under 29 U.S.C. § 1132(c)(1), the Court may impose a statutory penalty of up to $110 per day for the failure to provide requested documents.

157.    Medeiros is entitled to penalties, as well as equitable relief, interest, costs, and attorneys' fees against Wells Fargo for its failure to maintain and/or disclose plan documents.

158.    Wells Fargo continues to accrue penalties under ERISA until it properly discloses requested documents pursuant to ERISA.

**COUNT III**
**(Breach of Fiduciary Duties)**
**(Wells Fargo and Liberty)**

159.    All previous paragraphs are incorporated by reference.

160.    Wells Fargo and Liberty owe fiduciary duties to Plan participants, including Medeiros.

161.    Wells Fargo and Liberty failed to discharge its duties with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a).

162.    Wells Fargo and Liberty breached their fiduciary duties pursuant to 29 U.S.C. § 1132(a)(3) and all other pertinent ERISA regulations.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

163.    ERISA "does not elsewhere adequately remedy" the injuries caused to Medeiros by Defendants' breach of fiduciary duty violations.

164.    Liberty acted with malice and in bad faith against Medeiros, which constitutes a violation of its fiduciary duty.

165.    Liberty arbitrarily and capriciously denied Medeiros' benefits, which constitutes a breach of fiduciary duty.

166.    Wells Fargo acted imprudently by failing to oversee Liberty's claims administration.

167.    Defendants and Liberty had a duty to engage in meaningful dialogue with Medeiros, which they failed to do.

168.    Medeiros was harmed by Defendants' breaches of their fiduciary duties.

169.    Pursuant to 29 U.S.C. § 1132(g), Medeiros is entitled to recover her attorneys' fees and costs incurred herein from Wells Fargo and the Plan.

170.    Upon information and belief, separate equitable relief may be appropriate under 29 U.S.C. § 1132(a)(3), because 29 U.S.C. § 1132(a)(1)(b) is inadequate for recovery.

171.    Medeiros is entitled to equitable relief for Defendants' breach of their fiduciary duties, including for the breaches of fiduciary duties committed by any agents or third parties for Defendants.

172.    Liberty was unjustly enriched as a result of its breach of fiduciary duty violations, because it wrongfully withheld benefits for its own profit.

173.    On information and belief, Liberty did not adequately set aside reserves for Medeiros' LTD claim.

174.    On information and belief, Liberty incentivized its employees to make claims determinations based on Liberty's 'reserve report' and in the interest of its net income reports regarding company profitability.

175.    Because Liberty breached its fiduciary duties, Medeiros was actually

harmed.

176. Medeiros relied on the Plan to her detriment, believing that she was entitled to LTD benefits pursuant to the provisions of the Plan.

177. Medeiros is entitled to enjoin any act or practice by Wells Fargo and/or Liberty, which violates ERISA or the Plan, and/or she is entitled to see other appropriate equitable relief that is traditionally available in equity.

178. Liberty must return any benefits resulting from its breach to Medeiros.

179. As a direct and proximate result of Wells Fargo's and Liberty's breaches of fiduciary duty, Medeiros suffered actual financial harm and incurred financial expense.

180. On information and belief, Medeiros should be awarded mandamus relief, requiring Wells Fargo to establish a proper Plan pursuant to ERISA and other applicable law.

181. Medeiros is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid in full.

WHEREFORE, Medeiros prays for entry of judgment against Defendants as follows:

A. For all past and future LTD benefits under the terms of the Plan;

B. Clarifying and determining Medeiros' rights to future benefits under the terms of the Plan;

C. For any statutory penalties that may be available to Medeiros as a result of Defendants' violations of ERISA;

D. For all other equitable relief that is proper as a result of Defendants' breach of fiduciary duties;

E. For an award of Medeiros' attorneys' fees and costs incurred herein;

F. For an award of prejudgment interest on benefits and damages at the highest legal rate until paid in full; and

G.      For such and further relief as the Court deems just and reasonable.


Dated this 27th day of May, 2014.

                              CALDWELL & OBER, P.L.L.C.


                              By: s/ Erin Ronstadt
                                  Erin Ronstadt
                                  Jeremy Pekas
                                  Attorneys for Plaintiff

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745